PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TYRICE HILL, | ) |
| | ) CASE NO. 4:18CV00808 |
| Plaintiff, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| JONATHAN STONE, et al., | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** [Resolving ECF No. 4] |
| Defendants. | ) |

*Pro se* Plaintiff Tyrice Hill is an inmate at the Northeast Ohio Correctional Center ("NEOCC") located in Youngstown, Ohio. He brings this *in forma pauperis* action pursuant to 42 U.S.C. § 1983 against Jonathan Stone (Correctional Officer), Steven Osborn (Correctional Officer), Matt Burch (Correctional Officer), Kim Harbison (Administrative Clerk), Leeann Argiro (Warden Assistant), Amy Sullivan (Institution Inspector), and Chris LaRose (Warden) (collectively "Defendants"). ECF No. 1 at PageID #: 1-2, ¶ 4-11.

For the reasons that follow, this case is dismissed.

## I. Background

Plaintiff raises two primary issues in the Complaint. He alleges that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments in connection with a conduct report issued by Stone and related disciplinary proceedings, and he alleges that Defendants impeded his access to the courts.

### A. Conduct Report and Disciplinary Process

On February 9, 2018, Plaintiff received a conduct report issued by Stone. The report stated Plaintiff passed a note to Stone on February 3, 2018, asking Stone to convey contraband into the prison. *Id*. at PageID #: 2, ¶ 13; ECF No. 1-6. Plaintiff denied the allegation and requested prison camera video to establish that he was in the prison barbershop on February 3 at the time in question. Plaintiff claims he requested staff assistance in order to obtain the camera video and defend himself against the alleged offense, but Osborn determined Plaintiff did not need staff assistance. ECF No. 1 at PageID #: 2-3, ¶ 13, 15.

The Rules Infraction Board ("RIB") hearing concerning the offense charged in the conduct report commenced on February 12, 2018. The hearing was continued because Plaintiff did not receive the requested camera video and, in the absence of the video, Plaintiff desired that Stone be present at the hearing for questioning. *Id*. at PageID #: 3, ¶ 14.

The RIB hearing was reconvened on February 20, 2018 by Burch (chairperson) and Harbison (co-chairperson). Before the hearing, Burch advised Plaintiff that he would not be permitted to review prison camera video from February 3, 2018. Stone was present at the reconvened hearing and questioned by Plaintiff. *Id*. ¶ 15-16. Stone testified that the offense occurred on February 2, 2018, not February 3, 2018, but he wrote February 3, 2018 on the conduct report "because two other officers told him to." *Id*. ¶ 17. Plaintiff states that the conduct report should have been vacated in accordance with prison rules because Stone filed a false conduct report as to the date of the offense. *Id*. ¶ 18.

(4:18CV00808)

After Stone testified, Plaintiff addressed the RIB and "tried to raise all of the issues he had with the conduct report" and why he believed Stone issued it, but was "cut short" by Burch. The RIB found Plaintiff guilty of the offense charged. *Id.* ¶ 19-20.

As punishment, Plaintiff was placed in restrictive housing for twenty-nine days and limited privilege housing for ninety days. *Id.* at PageID #: 4-5, ¶ 26. Plaintiff claims that Stone, Burch, and Harbison violated his constitutional rights because he did not have notice of the offense or opportunity to prepare a defense and, without those procedural safeguards, was deprived of due process.[1] *Id.* at PageID #: 3-4, ¶ 21-25 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

On February 21, 2018, Plaintiff appealed the RIB ruling to LaRose and Argiro (Warden and Warden Assistant, respectively), arguing that the evidence relied upon by the RIB to find Plaintiff guilty was unreasonable. *Id.* at PageID #: 6, ¶ 35. LaRose affirmed the RIB's decision,

---

[1] Plaintiff filed two informal complaints with Sullivan against Stone and Burch regarding the conduct report and RIB hearing, but Sullivan advised him that those issues should be raised in his appeal of the RIB's decision, not through the grievance process. ECF No. 1 at PageID #: 6, ¶ 33; ECF Nos. 1-8 and 1-9. Plaintiff also sent two affidavits to Henry explaining that he was denied his right to the inmate grievance procedure and his fear of "something happening" to the camera video of February 3 and RIB hearing recordings of February 12 and 20, but received no response. ECF No. 1 at PageID #: 6, ¶ 34. With respect to Sullivan and Henry, they are not liable under § 1983 for their denial of administrative grievances or failure to act with respect to grievances concerning the unconstitutional conduct alleged in the grievances. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (liability under § 1983 must be based on active unconstitutional behavior) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). While a prisoner has a right to file grievances, there is no constitutional right to an effective grievance procedure. *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citation omitted). Accordingly, Plaintiff fails to state a § 1983 claim against Sullivan and Henry upon which relief can be granted.

3

(4:18CV00808)

finding that there was sufficient evidence in the record to support the decision and the penalty assessed was proportional to the offense. *Id*. at PageID #: 7, ¶ 38; ECF No. 1-12 at PageID #: 40.

### B. Access to the Courts

Plaintiff claims that while in restricted and limited privilege housing, his access to the law library was limited at a time when he had multiple lawsuits pending, resulting in a violation of his First Amendment right of access to the courts. ECF No. 1 at PageID #: 5-6, ¶ 29-32. Plaintiff filed a complaint and grievance regarding his alleged denial of access to the courts. *Id*. at PageID #: 5, ¶ 29; ECF No. 1-15.

Relevant to the Court's analysis is Plaintiff's case in the Lucas County of Common Pleas, Case No. CR-0199901859, where a motion filed by Plaintiff to vacate his conviction in that court was pending. Plaintiff alleges that the librarian took too long to send Plaintiff cases he requested in order to respond to the State of Ohio's opposition to his motion to vacate and, as a consequence, his reply was untimely and incomplete. *Id*. at PageID #: 5-6, ¶ 30-31. The Lucas County Court of Common Pleas denied Plaintiff's motion to vacate before receiving Plaintiff's reply.[2] Plaintiff states that his motion to vacate was denied because of his limited access to the library while in punitive segregation, violating his constitutional right to access the courts.[3]

---

[2] Although Plaintiff's reply was submitted after the common pleas court denied his motion to vacate, that court nevertheless considered his reply as a motion for reconsideration, which was denied. ECF No. 1 at PageID #: 5, ¶ 30; ECF No. 1-18.

[3] Plaintiff does not claim any actual injury with respect to Plaintiff's other pending cases due to the alleged unconstitutional denial of access to the courts. *See* ECF No. 1 at PageID #: 6, ¶ 32.

4

(4:18CV00808)

Plaintiff acknowledges that limited library access (and therefore access to the courts) is no longer an issue because he has been released from segregated housing. *Id*. at Page ID #: 6 ¶ 32.

## II. Standard of Review

*Pro se* pleadings are liberally construed by the Court. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the district court is required under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A to review these complaints and to dismiss, before service, any such complaint that the Court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). While some latitude must be extended to *pro se* pleadings, the Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Thomas v. Brennan*, No. 1:18 CV 1312, 2018 WL 3135939, at *1 (N.D. Ohio June 26, 2018) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985) and *Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001)).

In order to withstand scrutiny under § 1915(e)(2)(B)(ii) and § 1915A, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill*, 630 F.3d at 470-71 (holding that the Fed. R. Civ. P. 12(b)(6) dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals for failure to state a claim under § 1915(e)(2)(B) and 1915A)

5

(4:18CV00808)

(quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)). In analyzing the sufficiency of Plaintiff's complaint under § 1915(e)(2)(B) and § 1915A, the Court considers the requirements of Fed. R. Civ. Pro. Rule 8(a)(2) and *Iqbal*/*Twombly*. Rule 8 requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and does not require detailed factual allegations. That said, the pleader must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677-78 (citing Rule 8; *Twombly*, 550 U.S. at 555). A complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id*. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### III.  Law and Analysis

To state a claim under § 1983, Plaintiff must allege that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Plaintiff claims that: (1) he was retaliated against[4] and did not receive proper notice of the offense of which he was

---

[4] Plaintiff alleges that he was retaliated against in violation of the First Amendment, but does not specify the conduct that forms the basis of this allegation. Retaliation for the exercise of constitutional rights is a violation of the Constitution and, in order to state a retaliation claim, Plaintiff must allege that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Reading the Complaint liberally, Plaintiff appears to claim that
(continued...)

6

(4:18CV00808)

accused in the conduct report; (2) Defendants improperly denied him staff assistance in order to respond to the offense in the conduct report; (3) the conduct report against him should have been dismissed because Defendants did not properly notify him of the offenses against him; (4) Defendants discriminated against him;[5] (5) he did not receive a fair and impartial hearing before the RIB; (5) while in punitive segregation he was denied access to the courts; and (6) he experienced various hardships while in restricted and limited-privilege housing. ECF No. 1 at PageID #: 8, ¶ 44. Plaintiff claims that the above-described conduct by Defendants violated his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments. *Id*.

Plaintiff seeks the following relief: (1) a declaration that Defendants' conduct violated his constitutional rights; (2) an order enjoining Defendants from engaging in the conduct described in the Complaint; (3) a reversal of the RIB's determination that Plaintiff was guilty of the offense charged; (4) and compensatory and punitive damages. *Id*. ¶¶ 46-49.

---

[4](...continued)
Stone issued an alleged false conduct report because "the inmates [Stone] was doing illegal business with believe [Plaintiff] was in the way of them doing business [with Stone.]" *See* ECF No. 1 at PageID #: 7, ¶ 40; *see also* PageID #: 2, ¶ 12 ("Plaintiff got into an argument with two other inmates that Plaintiff believes was during illegal business transactions with Officer Stone."). These allegations do not satisfy the above-listed elements and are insufficient to state a claim for retaliation. The Court is not required to conjure unpleaded facts or construct claims against Defendants on behalf of a *pro se* plaintiff. *See Grinter*, 532 F.3d at 577.

[5] Plaintiff does not specify the discriminatory conduct or basis of the alleged discrimination.

7

(4:18CV00808)

**A. Due Process**

Plaintiff claims that he did not receive due process in connection with the conduct report filed by Stone and the disciplinary hearing process. *See id.* at PageID #: 4, ¶ 23. In summary, Plaintiff alleges that Stone filed a false conduct report,[6] he did not receive fair notice of the offense in the report and was denied staff assistance in preparing his defense, and Defendants did not follow prison regulations regarding the disciplinary process,[7] thereby denying him a fair hearing.

To the extent that Plaintiff's claims for relief with respect to his conduct report and the disciplinary process would, if established, necessarily imply the invalidity of his disciplinary conviction, those claims are not cognizable under § 1983 unless Plaintiff shows that his disciplinary conviction has been invalidated. Because Plaintiff has not shown that his disciplinary conviction has been invalidated, due process claims that would imply the invalidity of his disciplinary conviction are not presently cognizable under § 1983. They are therefore dismissed for failure to state a claim upon which relief can be granted. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

---

[6] This claim is unavailing. A prisoner has no constitutional right to be free from false accusations of misconduct. *See Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). Moreover, Plaintiff's claim that the charges against him were false is barred by the finding of guilt by the RIB, and is not subject to a § 1983 challenge. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013).

[7] The failure of prison officials to follow procedures in connection with the disciplinary hearing is insufficient to establish a due process claim. *See Grinter*, 532 F.3d at 576 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.") and *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 2008) (due process does not require parole authorities to follow established procedure)).

(4:18CV00808)

To the extent that Plaintiff's due process claims do not necessarily imply the invalidity of his disciplinary conviction, those claims are also dismissed. In order to satisfy the requirements of the Due Process Clause, prison officials must provide a prisoner with: (1) written notice of the charges at least 24 hours before any hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense as long as permitting him to do so is not unduly hazardous to institutional safety or correctional goals; and (3) a written statement by fact-finders as to the evidence relied upon and the reasons for the disciplinary decision. *Wolff*, 418 U.S. at 564-566 (due process requirements for prisoner facing loss of good time credits). Plaintiff's disciplinary process complied with all of the requirements of *Wolff*.

First, Plaintiff asserts in conclusory fashion that he was not provided with notice of the offense alleged, but the conduct report and allegations in the Complaint reveal otherwise. The conduct report states that Plaintiff passed a note to Stone on February 3, 2018, asking Stone to convey contraband into the prison. ECF No. 1 at PageID #: 2, ¶ 13; ECF No. 1-6. The note was in evidence at the RIB hearing. *See* ECF No. 1-7. Stone clarified at the hearing that Plaintiff passed him the note on February 2, not February 3, but the change of date does not negate Plaintiff's notice that the nature of the offense charged involved soliciting Stone to convey contraband into the prison. *See Joiner v. Walton*, No. 11-14061, 2013 WL 878779, at *3 (E.D. Mich. Mar. 8, 2013) (prisoner's due process rights not violated when the disciplinary hearing officer found that the prisoner had violated a different code number than the ones contained in the notice because prisoner had notice that the disciplinary charges involved the allegation that he had sent fraudulent financial documents) (citing *Holt v. Caspari*, 961 F. 2d 1370, 1371 (8th Cir.

9

(4:18CV00808)

1992)); *Davis v. Zych*, No. 2:08-CV-13962, 2010 WL 5015383, at *3 (E.D. Mich. Dec. 3, 2010) (due process requirement of advance written notice of charges not violated when the disciplinary hearing officer changed the violation code from forging documentation to providing a false statement) (citing *Holt*, 961 F.2d at 1371).

Second, Plaintiff had the opportunity at his disciplinary hearing to question witnesses and present evidence. The RIB hearing originally scheduled for February 12, 2018 was continued because Plaintiff desired to question Stone in the absence of prison camera video. ECF No. 1 at PageID #: 3, ¶ 14. When the RIB hearing reconvened on February 20, 2018, Plaintiff questioned Stone. Afterward, Plaintiff addressed the RIB regarding what he believed to be Stone's motivation in bringing the conduct report, among other complaints about the process. *See id.* at PageID #: 7, ¶ 40. Plaintiff claims that he was denied due process because camera video of February 3 would have shown that he did not pass the note in question to Stone on that date. But denying Plaintiff access to prison camera video from February 3 is not alone a due process violation. *See Johnson v. Mohr*, No. 2:15-cv-86, 2015 WL 1526804, at *1-2 (S.D. Ohio Apr. 3, 2015). Moreover, Stone clarified at the hearing that Plaintiff passed him the note on February 2, not February 3, so prison camera video from February 3 would not have been relevant to Plaintiff's defense concerning the note and content thereof.

Third, the RIB issued a written decision identifying the evidence relied upon and the reason for its decision. The RIB's disposition states that the board relied upon Stone's statement and the note itself, and that Plaintiff presented a defense but the Board did not find him credible

(4:18CV00808)

because of the hand written note which was in evidence at the hearing.[8] *See* ECF No. 1-7. The RIB's ruling need only to be supported by "some evidence" in the record. *Superintendent, Massachusetts Corr. Inst. at Wolpole v. Hill*, 472 U.S. 445, 455-56 (1985). This standard is satisfied where there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

District courts have no authority to review a prison disciplinary committee's resolution of factual disputes or to determine a prisoner's innocence or guilt concerning the offenses alleged in the conduct report. *Id*. at 455 (disciplinary board's fact findings and decisions with respect to appropriate punishment are not subject to "second-guessing" upon review). The Court's only role is to determine whether the hearing complied with the basic requirements to satisfy due process.

Plaintiff's disciplinary process satisfied all of the elements of *Wolff*. Accordingly, Plaintiff fails to state due process claim upon which relief can be granted.

**B. Discipline in Segregated Housing does not Violate Due Process or the Eighth Amendment**

**1. Liberty interest**

Plaintiff claims that his placement in segregated housing during the disciplinary process and after he was found guilty of the offense charged violated his liberty interest protected by the Due Process Clause. In order to determine whether segregation from the general population

---

[8] In affirming the RIB's decision, LaRose found that there was sufficient evidence in the record to support the decision and the penalty assessed was authorized and proportional to the offense. ECF No. 1-12 at PageID #: 40.

11

(4:18CV00808)

constituted a deprivation of Plaintiff's protected liberty interest, the Court must determine whether the segregation imposed an "atypical and significant" hardship on Plaintiff "in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486 (1995) (a prisoner does not have a due process liberty interest in remaining free from disciplinary segregation). Plaintiff claims that his confinement in restricted and limited-privilege housing constituted an atypical and significant hardship because while in restrictive housing, he was confined to his cell for longer periods of time than those in the general population, recreational time was limited, cell furnishings were sparse, and telephone and visitation privileges were limited. *See* ECF No. 1 at PageID #: 4, ¶ 26, 27. In addition, Plaintiff lost other privileges such as the ability to work. *Id.* at PageID #:4-5, ¶ 28.

These claims are unavailing. In *Sandin*, the Supreme Court rejected a prisoner's contention that confinement in segregation for punitive reasons encroaches upon a prisoner's liberty interest. *See Sandin*, 515 U.S. at 484. The Sixth Circuit "has repeatedly found that confinement to administrative segregation does not present an 'atypical and significant' hardship implicating a protected liberty interest." *Murray v. Unknown Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (collecting cases (prisoners have no liberty interest in a particular security level or prison employment)); *see also Ingram v. Harry*, 97 F. App'x 20, 21 (6th Cir. 2004) (prisoner's confinement in cell while other prisoners work or attend school does not constitute an atypical or significant hardship) (citing, among other authorities, *Sandin*, 515 U.S. at 484).

A simple loss of privileges for a limited period of time generally does not constitute an atypical and significant hardship. Here, Plaintiff's confinement in segregation was neither

12

(4:18CV00808)

excessively long nor indefinite. See *Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117 days in administrative segregation did not impose an atypical or significant hardship); *Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017) (six months in administrative segregation does not constitute an "atypical and significant" hardship implicating inmate's due process rights); *cf. Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight-year confinement in segregation constitutes an atypical duration). Moreover, even if Plaintiff's liberty interest in disciplinary segregation were implicated, the Court has already determined that the RIB's determination of guilt and appropriateness of the disciplinary punishment imposed satisfied the requirements of due process. Plaintiff fails to state a claim upon which relief can be granted for a violation of due process with respect to his confinement in segregated housing.

### 2. Eighth Amendment

Plaintiff claims that Defendants violated his Eighth Amendment rights, but he does not specifically indicate what conduct is at issue. The Court is not required to construct claims on behalf of Plaintiff but, to the extent Plaintiff claims that his punitive placement in segregated housing constitutes cruel and unusual punishment, he fails to state a claim for an Eighth Amendment violation upon which relief can be granted.

The Eighth Amendment limits the power of states to punish individuals convicted of crimes. The punishment may not be "barbarous," "involve the unnecessary and wanton infliction of pain," or contravene "evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (citations omitted); *Walker v. Mintzes*, 771 F.2d 920, 926 (6th Cir. 1985) (the basic needs of life are adequate food, clothing,

13

shelter, sanitation, medical care, and personal safety) (citations omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wislon*, 832 F.2d 950, 954 (6th Cir. 1987).

Punitive confinement of a prisoner in restricted and limited privilege housing does not, in and of itself, constitute cruel and unusual punishment. *Hutto v. Finney*, 437 U.S. 678, 685-86 (1977). Plaintiff alleges that while confined in segregated housing he was denied certain privileges available to inmates in the general population, but does not allege (nor can the Court infer) that he was deprived of the minimal civilized measures of life's necessities while in punitive segregation. *See Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (lack of running water and toiletries for six days does not violate the Eighth Amendment) (citation omitted); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (a flooded cell, an inoperable toilet, and deprivation of a lower bunk are temporary inconveniences that do not violate the Eighth Amendment) (citation omitted); *Lamb v. Howe*, 677 F. App'x 204, 209-10 (6th Cir. 2017) (four-hour exposure to human waste from flooded toilet was a temporary inconvenience that does not constitute an Eighth Amendment violation) (citation omitted).

Plaintiff fails to state a claim for an Eighth Amendment violation while in segregated housing upon which relief can be granted.

### C. Access to the Courts

Plaintiff alleges that he had limited access to NEOCC's law library and no legal assistance during his confinement in segregated housing in violation of his constitutional right of

14

(4:18CV00808)

access to the courts under the First Amendment. *See Bounds v. Smith*, 430 U.S. 817, 821-23 (1977). To state a claim for denial of access to the courts, a prisoner must allege particular actions by prison officials that prevented him from pursuing, or caused the rejection of, a specific non-frivolous direct appeal, habeas corpus petition, or civil-rights action related to his conviction or conditions of confinement. *Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Christopher v. Harbury,* 536 U.S. 403, 415 (2002); *Thaddeus-X,* 175 F.3d at 391 ("[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only.") (citing *Lewis,* 518 U.S. at 355)). An inmate must show an "actual injury" as a result of an alleged denial of access to the courts. Theoretical deficiencies of a prison's law library are insufficient to establish a constitutional violation.[9]

The only allegation of actual injury by Plaintiff is the denial of his motion to vacate in Lucas County Court of Common Pleas Case No. CR-0199901859.[10] A review of the public docket[11] in that case shows the case opened on May 12, 1999, against Hill with one count of attempt to commit felonious assault and one count of assault. On July 20, 1999, Hill, who was represented by counsel, pleaded no contest to attempt to commit felonious assault. On August 3,

---

[9] The requirement that an inmate show an "actual injury" is based on the constitutional principle of standing. *Lewis*, 518 U.S. at 349.

[10] With respect to his other then-pending cases, Plaintiff alleges that the impact of restricted library access on those cases is unknown. Plaintiff fails to state a claim that his constitutional rights were violated as to those cases because he has not demonstrated that limited library access resulted in actual injury or prejudice.

[11] The Court may take judicial notice of public records, including the public dockets of state courts. *See Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980) (citation omitted).

(4:18CV00808)

1999, Hill was sentenced by the Lucas County Court of Common Pleas to one year, and credited with 175 days. On February 16, 2018, more than eighteen years later, Hill filed a motion in the Lucas County Court of Common Pleas to vacate that conviction. His motion was denied, and it forms the basis of Plaintiff's claim that Defendants violated his constitutional right to access the courts.

State prison officials have no constitutional obligation to assist prisoners with access to the courts "for litigation that is not related to the inmate's incarceration." *See Knop v. Johnson*, 977 F.2d 996, 999 (6th Cir. 1992) (citing *John L. v. Adams*, 969 F.2d 228 (6th Cir. 1992)). According to the publicly available information on the Ohio Department of Rehabilitation and Correction's website,[12] Plaintiff is currently incarcerated for aggravated robbery with a stated prison term of twenty-one years and a gun specification of seven years. Plaintiff's alleged violation by Defendants of his access to the courts with respect to Case No. CR-0199901859 does not pertain to a matter related to his current sentence and/or confinement and, therefore, his allegation that he was denied access to the courts does not state a claim upon which relief can be granted. *See Lawson v. Warner*, No. C14-5100 RBL-KLS, 2015 WL 880987, at *6 (W.D. Wash. Mar. 2, 2015) (inmate claiming denial of access to the courts provided opportunity to file amended complaint when original complaint alleged pending direct appeals on criminal matters but failed to allege that those pending criminal matters were related to inmate's *current* sentences and conditions of confinement).

---

[12] *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A488329.

(4:18CV00808)

But even if Plaintiff's motion to vacate in Case No. CR-0199901859 could be construed to constitute a legal claim related to Plaintiff's current incarceration, he nevertheless fails to state a § 1983 claim for violation of his constitutional right to access the courts. Prison regulations limiting an inmate's access to the library, but not to legal materials, which serve a valid penological interest for violating institutional rules do not support a § 1983 denial of access claim even if actual injury occurs. *Colvin v. Schaublin*, 113 F. App'x 655, 658 (6th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). Even with respect to access to legal materials, delays that are reasonably related to legitimate penological interests do not violate the constitutional right to access to the courts even if they result in actual injury. *Lewis*, 518 U.S. at 361-62 (a delay in providing legal materials as long as sixteen days is not of constitutional significance as long as the delay is the product of prison regulations reasonably related to legitimate penological interests).

Plaintiff's alleged inability to file a timely and complete reply to the State of Ohio's response to his motion to vacate in Case No. CR-0199901859 resulted from the limitations of restricted and limited privilege housing. Plaintiff does not allege that Defendants were personally involved in "actively interfering" with his attempts to prepare and file legal documents in Case No. CR-0199901859 separate and apart from restrictions to legal materials resulting from Plaintiff's violation of institutional rules and disciplinary confinement. *Colvin*, 113 F. App'x at 658 (the right of access to the courts prohibits prison officials from actively interfering with an inmate's attempt to prepare and file legal documents) (quoting *Lewis*, 518 U.S. at 350). Nor does Plaintiff allege that any facts from which the Court could infer that Plaintiff's restricted access to

17

(4:18CV00808)

the law library, and any delays in receiving legal materials while he was in restricted and limited privilege housing, was unrelated to a legitimate penological interest. Therefore, even if Plaintiff experienced actual injury in Case No. CR-0199901859, any such injury does not support a § 1983 claim for violating his constitutional right of access to the courts because the prison's rules limiting access to the law library and legal materials while in segregated housing are reasonably related to a legitimate penological interest. *Colvin*, 113 F. App'x at 658 (inmate's placement in isolation, not defendants' actions, caused restricted access to the law library).

Plaintiff fails to state a claim upon which relief can be granted regarding his constitutional right to access to the courts.

### IV. Conclusion

For all of the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Plaintiff's motion for the appointment of counsel is denied as moot. ECF No. 4. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.


   IT IS SO ORDERED.


 November 16, 2018            */s/ Benita Y. Pearson*
Date                            Benita Y. Pearson
                                        United States District Judge